### BLAMBERG BROS. v. UNITED STATES.

(District Court, D. Maryland. May 31, 1921.)

No. 797.

Admiralty ⬥40—Without jurisdiction against government, where private owner or vessel would not have been liable.

Under Act March 9, 1920, forbidding seizure of a government owned ship, but permitting a suit in admiralty against the United States if its merchant vessel would have been liable to seizure if it had been privately owned, and requiring such suits to be brought in the district in which the parties or some of them reside or have their principal place of business, or in which the vessel or cargo is found, the District Court, regardless of the question of venue, is without jurisdiction to entertain a libel against the United States in a case where a private owner of the vessel would not have been liable in personam, and the vessel could not have been seized in rem in any court of the United States, so that such libel cannot be

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

maintained for failure to deliver a cargo from a barge which had been sold by the United States to the party operating it, with a provision that the title was to remain in the United States until the contract price was paid.

In Admiralty. Libel by Blamberg Bros., a corporation, against the United States. Libel dismissed for want of jurisdiction.

Joseph Townsend England, of Baltimore, Md., for libelant.
Robert R. Carman, U. S. Atty., of Baltimore, Md.

ROSE, District Judge. On July 26th last the United States agreed to sell its schooner barge, the Catskill, to the Guidera Towing & Transportation Company, hereinafter called the Towing Company, for $60,-000—$6,000 down, and $54,000 in 18 equal monthly installments, the first of which was not payable until the succeeding January. The purchaser went into immediate possession, although the vendor retained title until the balance of the purchase price was paid.

In October the Towing Company entered into contracts of affreightment with the libelants and many others, under which it received on board the barge at Baltimore goods to be carried to Havana and there delivered. When in November the vessel reached its destination, it found commercial conditions there greatly disturbed. The inability of the Towing Company to meet its engagements became manifest. The cargo was not delivered to the consignee, and 6 months later was still on board. This libel has been filed to recover against the government the liability in rem of the barge for the nondelivery of libelants' goods.

The respondent says that this court is without jurisdiction. It is not questioned that under the Act of March 9, 1920 (41 Stat. 525), the libelants may, in a proceeding in personam, recover in the proper district for any liability which in the courts of the United States might have been enforced against the barge in rem, had she been privately owned; but it is said that as the vessel was, at the time the libel was filed, outside of this country, and has ever since remained in foreign waters, it would not have been subject to the processes of our courts, had it belonged to an individual, and that it follows that no liability may now be asserted in them against the government.

The principal purpose of the statute under which the proceeding was brought was to prevent within the United States the arrest upon judicial process of any government owned ship or cargo, without thereby working injustice or hardship to those who as against either, had valid claims which, if the vessel or the merchandise had belonged to private persons, they might have asserted in rem; but there is in it, and in its legislative history, cause to believe that it may also have intended to give the consent of the United States to being made a respondent in suits in personam upon some classes of maritime liabilities in which individuals would have been liable in personam, but upon which proceedings in rem could not have been maintained.

The first section of the statute forbids the arrest or seizure of a government owned ship or cargo. The second provides that a libel in personam may be brought against the United States when, if the vessel

or merchandise mentioned in the first section had been privately owned, a proceeding in admiralty could be maintained at the time the suit was commenced, provided the ship in question was employed as a merchant vessel. Then follows the venue provision, upon the proper construction of which the parties are at issue. It reads:

"Such suits shall be brought in the District Court of the United States for the district in which the parties  *  *  *  or any of them reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found."

It is further provided that, upon the application of either party, the cause may, at the discretion of the court, be transferred to any other District Court of the United States. The libelants live in this district, and they say that the quoted language is express authority for the institution of the suit in this court. In their view the libel may be properly filed in (1) the district in which any of the libelants live, or (2) in which they have their principal place of business, or (3) in which the vessel charged with liability is found. They argue that Congress knew that it was giving a somewhat extended choice of venue, and guarded against the possibility of resulting inconvenience by the transfer provision.

The government replies that so to hold is to misinterpret the purpose of the provision as to venue. In its view the libel must be filed in the district in which the offending res is, whenever the cause of action is one in which the liability would be in rem only if the ship or cargo were privately owned. Permission to sue wherever libelant lives or has its principal place of business is in its view, given only in those cases in which the proceeding is one which in its origin is essentially in personam. It was intended as a limitation rather than an extension upon the number of districts in which the suit might be brought. Where the United States is liable in personam, and consents to be sued generally, proceedings might properly be instituted in any one of some four score districts for the government can be found in every one of them. No such wide range of choice is necessary for the protection of persons aggrieved and in practice it might, if permitted, lead to abuse, and would, upon occasion, cause much inconvenience.

The libelants could not complain if they were allowed to sue where they lived or had their principal place of business. The libelants at bar not only challenge directly this construction of the venue provision, but assert that there is nothing in the act to show that Congress had in mind any distinction as to venue between causes of action, which as against individuals or individually owned ships or cargo would have been in personam or in rem, and that, on the contrary, its primary purpose was to insure that as against the United States they should always be in personam, reserving to the libelant the right, under some circumstances important, to claim, if he could, that his substantive rights should be those he would have had in a proceeding in rem. They argue that it is by no means clear that Congress has consented that the United States shall be suable in personam at all, unless a liability in rem would have existed except for the statute. They point out that if

such permission is not given, and if the government's construction of the venue provision is accepted, there will be no circumstances in which the right to sue in the district of libelants' resident or principal place of business, can be exercised.

The learned advocates for the government do not themselves contend that the United States has agreed to be sued in personam in admiralty in all cases in which an individual might be; but they say it has in that large number of instances in which liability depends upon its relationship as owner or operator of a particular ship, as distinguished from a liability growing out of some maritime transaction not specifically connected with a particular vessel. These questions and others have been discussed on one side and the other with zeal, learning, industry, and ability. In the end both admit that there are things in the statute which do not fit in well with any theory as to the class of cases in which the government has consented to be sued, and that the result of the legislative history of the enactment does not make its interpretation easier. It is quite probable that somewhere in the United States there are even now pending cases in which some or all of these questions must be passed upon, but it does not appear that it will be necessary to do so in the one at bar.

There is no reason to suppose that Congress intended to make the United States suable under any circumstances in which a suit could not have been instituted in this country, were the ship or cargo privately owned, and yet, if the libelants' contention be sustained, that will be the result here. There was no privity of contract between the United States and the shippers of cargo by the Catskill, nor has the United States done them any actionable wrong. If it were an individual, no proceeding in personam could be brought against it, either in admiralty or at common law. Nor could any libel be maintained against the ship in rem in any court of the United States, because none of them could have taken possession of her. The grant of jurisdiction made by the second section of the act is expressly limited to such proceedings as "could be maintained at the time of the commencement of the action herein provided for," and in the instant case at that time there was no court in the United States in which the suit could have been maintained, either in rem or in personam, had an individual occupied the same relation to the cause of action as was borne by the United States.

Nor is this a narrow construction. It is one in perfect harmony with the most liberal and far-reaching purpose which can reasonably be attributed to Congress. To hold that it intended that a citizen should be no worse off because of government ownership is as far as any one will be justified in going. There is no reason to suppose that it intended to open the doors of its courts, as against the United States, to suits which could not there have been prosecuted against an individual or his property. The general language of every statute must be read in the light of the legislative intent, in so far as that is unmistakably expressed.

It follows that, as well when this libel was filed as now, this court was without jurisdiction to entertain it, and it must be dismissed.