### THE ISONOMIA.

### CUNARD S. S. CO., LIMITED, v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 24, 1922.)

No. 50.

1. **United States ⊜125—Cannot be sued without consent.**

   The United States, like all other sovereignties, cannot be impleaded, in a judicial tribunal, except in so far as it has consented to be sued.

2. **United States ⊜125—Statute giving consent to be sued must be strictly construed.**

   An act permitting a suit to be brought against the United States must be strictly construed, since the courts are confined to the letter of the statute which expresses the consent, and all its provisions are jurisdictional.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. United States ⬤⇒125—Congress can prescribe court in which United States may be sued.**

Congress has the power, not only to say in what class of cases the United States may be sued, but also in what court the suit may be brought.

**4. Admiralty ⬤⇒32—Can be sued for liability in rem of government vessel in district where vessel is found.**

Under Suits in Admiralty Act March 9, 1920, which was enacted to restore the immunity from seizure of government-owned merchant vessels taken away by Shipping Act Sept. 7, 1916, § 9 (Comp. St. § 8146e), and which provided in section 2 that in cases where, if such vessel were privately owned, a proceeding in admiralty could be maintained, a libel in personam might be brought against the United States, and should be brought in the district in which the parties suing reside or have their principal place of business, or in which the vessel or cargo charged with liability is found, the provision for suit in the district in which the parties reside was manifestly intended to cover cases in which a suit in personam could have been maintained, and a suit to enforce a liability which could have been enforced only by proceeding in rem must be brought within the district where the vessel is found, since Congress did not intend to permit suits against the United States, except in cases where the suit could have been brought if the vessel had been privately owned.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Cunard Steamship Company, Limited, against the United States, as owner of the steamship Isonomia. From a decree sustaining exceptions of the United States, and dismissing the libel for want of jurisdiction, libelant appeals. Affirmed.

The libelant is a corporation organized and existing under the laws of the United Kingdom of Great Britain and Ireland. It has its principal place of business at Liverpool, England. Its principal place of business in the United States is in the city of New York. The respondent was and is at the times hereinafter mentioned the owner of the steamship Isonomia, which at the times hereinafter mentioned was employed by respondent as a merchant vessel.

The libel alleges that on August 30, 1920, a contract was entered into by and between Victor S. Fox & Co., Inc., as agents for the steamship Coosa, then owned by the United States and the libelant, whereby it was agreed that the said steamship Coosa should be berthed and wharfed at libelant's pier 32, North River, at the rate of $185 per day, while the vessel was loading, or while any part of her cargo remained on the pier, together with the expense of lights, water and telephones, and any other expenses incurred by the libelant by reason of the berthing of said vessel at said pier, all of which was to be paid by said steamship Coosa to the libelant as the agreed wharfage. It further alleges that pursuant to said agreement, on September 2, 1920, cargo was deposited on said pier by Victor S. Fox & Co., Inc., as such agents, and further cargo was so received on said pier thereafter, and remained on said pier up to and including September 22, 1920. And it alleges that on September 20, 1920, by consent of the parties to said contract, the steamship Isonomia, for which vessel said Victor S. Fox & Co., Inc., were also agents, was substituted for the steamship Coosa, and on said day the steamship Isonomia, then and now owned by the respondent, berthed at said pier and thereafter said cargo was laden on board her. The Isonomia left said pier on September 22, 1920.

It then claims that by virtue of the facts alleged a lien in favor of the libelant exists against the Isonomia, pursuant to section 30, subsection P of the Act of June 5, 1920 (41 Stat. 988), known as "the Ship Mortgage Act." And it claims that by reason of the premises stated the respondent became and is now indebted to the libelant for wharfage for 21 days at the rate of

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

$185 per day and for expenses, amounting in all to the sum of $3,914, with interest thereon from September 22, 1920. And the libel further states that libelant "elects that this libel shall proceed in accordance with the principles of libels in rem."

The United States appeared specially and, without submitting to the jurisdiction of the court, excepted to the libel in the following particulars: (1) In that it is not alleged in the libel that the steamship Isonomia or its cargo, at the time of the filing of the said libel, was found within the Southern district of New York and within the jurisdiction of this honorable court. (2) In that the facts alleged in the said libel do not constitute a cause of action in rem in admiralty. And it was prayed that the libel be dismissed. The court·below sustained the exceptions and dismissed the libel.

Lord, Day & Lord, of New York City (Allen Evarts Foster, of New York City, and George De Forest Lord, of Cedarhurst, N. Y., of counsel), for appellant.

William Hayward, U. S. Atty. (Ralph B. Romaine, Sp. Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The libel claims a lien upon a ship in her home port for wharfage furnished in aid of her loading; but, before considering that, there is a preliminary question which must be first considered, and the determination of that question may make it unnecessary to refer to any other. It appears that the libel does not allege that the vessel sought to be charged with liability was at the time of the filing of the libel found in the Southern District of New York in which the libel was filed. The respondent, therefore, insists that the District Court was without jurisdiction to entertain the suit.

[1] The suit is predicated upon the assumption that a suit in admiralty can be maintained against the United States. If that assumption be well founded, it must be because some statute has conferred the right; for no principle is better settled than that a broad distinction exists between the existence of a right and the power to enforce it in a court of justice, and the United States, like all other sovereignties, cannot be impleaded in a judicial tribunal, except in so far as it has consented to be sued. Cotton v. United States, 11 How. 229, 231, 13 L. Ed. 675. This makes it necessary to inquire whether Congress has consented that the United States can be sued in admiralty, and, if so, to what extent.

On March 3, 1887, Congress passed the Tucker Act, which authorized certain suits against the government to be brought in the Court of Claims, including suits upon any contract with the government, or for damages, liquidated or unliquidated, in cases not sounding in tort, "in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable." 24 Stat. c. 359, p. 505 (Comp. St. § 991). The District Courts were given concurrent jurisdiction where the amount of the claim did not exceed $1,000. The Circuit Courts were given concurrent jurisdiction where the amount exceeded $1,000 and did not exceed $10,000.

On September 7, 1916, Congress passed the act creating the United States Shipping Board. Section 9 of that act provided as follows:

"Every vessel purchased, chartered, or leased from the board shall, unless otherwise authorized by the board, be operated only under such registry or enrollment and license. Such vessels while employed solely as merchant vessels shall be subject to all laws, regulations, and liabilities governing merchant vessels, whether the United States be interested therein as owner, in whole or in part, or hold any mortgage, lien, or other interest therein." 7 U. S. Comp. St. § 8146e, p. 8651.

The act of 1916 came before the Supreme Court in The Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 962. That vessel, which was owned and operated by the United States, had collided with the Helena off the coast of Cape Cod, and the District Court in Massachusetts, a libel having been filed against the Lake Monroe, issued process for the seizure of the ship. The Supreme Court held that, because of the act of 1916, in spite of her ownership by the United States, the vessel was subject to the same arrest as any vessel privately owned.

The arrest and seizure of government-owned merchant vessels was regarded as detrimental to the public interest. While it was recognized as proper that the United States should permit suits to be brought in admiralty against the government, it was deemed wise to restore the immunity of such vessels from seizure which had been taken away by the Shipping Act of 1916. As respects government vessels of war, or those employed in the revenue service of the government, they were always exempt from seizure; their immunity from arrest not having been taken away by the act of 1916. The consequence was that in 1920 Congress passed the Suits in Admiralty Act, which provided that no vessel owned by the United States should be subject to arrest or seizure by judicial process. 41 Stat. 525. In other words it restored the immunity from seizure which merchant vessels owned by the government possessed prior to the act of 1916, and it declared that a suit in personam in admiralty might be brought against the United States in a case where, if the vessel had been privately owned or operated, a proceeding in admiralty could be maintained at the time of the commencement of the action. Then the act went on to provide, as already set forth, that such suits shall be brought in the District Court "for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found." Section 2.

This is the act upon which the libelant's right to maintain this suit depends, and the meaning of that act we are now called upon to determine. Section 1 of the act provides:

"That no vessel owned by the United States * * * shall hereafter, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions. * * *"

And section 2 provides:

"That in cases where, if such vessel were privately owned or operated, * * * a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States, * * * provided that such vessel is employed as a merchant vessel. * * * Such suits shall be brought in the

District Court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found."

[2] In interpreting the act, permitting as it does a suit to be brought against the United States, we must follow the rule of strict construction. This follows from the fact that the United States cannot be sued without their consent, and, if Congress in certain cases gives its consent, the courts are confined to the letter of the statute which expresses such consent. Schillinger v. United States, 155 U. S. 163, 166, 15 Sup. Ct. 85, 39 L. Ed. 108. And all the provisions of such a statute are jurisdictional. As the liability and the remedy are created by the statute, the limitations of the remedy are regarded as limitations of the right. The Harrisburg, 119 U. S. 214, 7 Sup. Ct. 140, 30 L. Ed. 358.

[3] Congress has the power, not only to say in what kind of cases the United States may be sued, but in what court the suit may be brought. There are two kinds of suits in admiralty; one being a suit in personam, the other a suit in rem. One is a suit against a person and the other against the vessel. In many cases the libelant may sue either in rem, against the vessel, or in personam, against the owner, as he prefers. Thus, in cases of collision, the ship may be sued in rem, as the offending thing which caused the injury, or the libelant may elect to sue the owners in personam because of the negligence of those in charge. And similarly in cases of cargo damage the suit may be in rem, against the ship, or in personam, against her owners, either for their negligence, or for breach of the contract safely to carry. And there are cases in which there may be a joinder of proceedings in rem and in personam. See Benedict's Admiralty (4th Ed.) § 294. Admiralty rule 13 declares that:

"In all suits for mariners' wages or by material men for supplies or repairs or other necessaries, the libelant may proceed in rem against the ship and freight and/or in personam against any party liable."

And rule 14 declares that:

"In all suits for pilotage or damage by collision the libelant may proceed in rem against the ship and/or in personam against the master and/or the owner."

It is necessary, in construing the act of 1920, to keep in mind the above principles. These rules were promulgated on March 7, 1921, and the Suits in Admiralty Act, as already stated, was adopted on March 9, 1920, or a year prior. However, prior to the adoption of these new rules the old admiralty rules 12 to 20 (267 Fed. x–xi) had allowed in certain cases, as was held in The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727, a joinder of ship and freight, or ship and master, or alternative actions against ship, master, or owner alone; but in no case within those rules could ship and owner be joined in the same libel. The Supreme Court in the Corsair Case had expressly left the question open as to whether ship and owner could be joined in the same libel in cases not falling within those rules. But other courts had expressly held in favor of joinder in such cases, and in Benedict's Admiralty, § 294, that distinguished authority had declared that the ad-

vantage of such right was so obvious and the objections thereto so technical that there could be little doubt that the practice would be upheld, if the question was ever presented to the highest court.

[4] In the light of the rules of procedure referred to, it seems obvious to us why Congress adopted the venue clause found in section 2 of the act of 1920. In cases in which the libelant has an alternative remedy, he may avail himself of the alternative venue. The possible alternative venue relates, and relates only, to cases in which there is an alternative remedy. In other words, if there is a liability of a vessel and a concurrent liability of the owner, the libelant may, under section 2 of the act of 1920, sue where he has his principal place of business or where he finds the vessel. As the United States may be said to be domiciled everywhere within their territory, the rule so construed is exactly the same as between private parties in a suit against the owners of a vessel. The United States being everywhere within their territory, the libelant may sue in personam in the district where he resides and obtain jurisdiction of the respondent, or he may sue in rem where he finds the vessel without concerning himself with the whereabouts of the owner. But where there exists solely the liability of the vessel and no liability of the owner, the libelant must sue under the act of 1920, as prior to the act, only in the district in which he finds the vessel.

We arrive at that conclusion, as we are convinced that the purpose of the act was to place the United States on exactly the same footing as a private party. That this was the intent appears from the language of section 2, declaring "that in cases where, if such vessel were privately owned or operated," a proceeding in admiralty could be maintained "at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States," provided the vessel was employed as a merchant vessel, etc. We understand this to mean that, where no right of action would exist between private parties, none would exist against the United States; and in the instant case it is admitted that, had the Isonomia been privately owned, instead of by the United States, no suit against her, on the cause of action alleged in the libel, would lie, except in the district where she was found.

The general language of the provision as to venue found in section 2, as of every part of the act of 1920, must be read in the light of the legislative intent so far as that intent is clearly expressed. Read in the light of that intent, we construe the provision giving permission to sue wherever libelant lives or has its principal place of business relates to those cases in which the proceeding is one which in its origin is essentially in personam, and that it does not extend to cases in which the proceeding is one which in its origin is essentially in rem, but in which the United States is made by virtue of the act suable in personam. In such a case the right to sue must, in our opinion, under the Suits in Admiralty Act, be pursued as in the case of a private individual in the district where the res is found. We find no reason to suppose that Congress intended to make the United States suable under any circumstances in which a suit could not have been instituted if the ship

had been privately owned. It is difficult to believe that Congress intended in the venue provision of section 2 to confer upon one suing for a wrong committed by a publicly owned ship a choice of jurisdiction which he would not possess in case the wrong was committed by a privately owned ship.

The Act of March 9, 1920, was before the District Court of Maryland in Blamberg Bros. v. United States, 272 Fed. 978. In that case the government claimed that the libel must be filed in the district in which the offending res is, whenever the cause of action is one in which the liability would be in rem only if the ship or cargo were privately owned, and that as the vessel, the offending res, was not within the district, the court was without jurisdiction. Judge Rose held that the court was without jurisdiction and dismissed the libel. In doing so he said:

"There is no reason to suppose that Congress intended to make the United States suable under any circumstances in which a suit could not have been instituted in this country, were the ship or cargo privately owned, and yet, if the libelants' contention be sustained, that will be the result here. There was no privity of contract between the United States and the shippers of cargo by the Catskill, nor has the United States done them any actionable wrong. If it were an individual, no proceeding in personam could be brought against it, either in admiralty or at common law. Nor could any libel be maintained against the ship in rem in any court of the United States, because none of them could have taken possession of her. The grant of jurisdiction made by the second section of the act is expressly limited to such proceedings as 'could be maintained at the time of the commencement of the action herein provided for,' and in the instant case at that time there was no court in the United States in which the suit could have been maintained, either in rem or in personam, had an individual occupied the same relation to the cause of action as was borne by the United States. Nor is this a narrow construction. It is one in perfect harmony with the most liberal and far-reaching purpose which can reasonably be attributed to Congress. To hold that it intended that a citizen should be no worse off because of government ownership is as far as any one will be justified in going. There is no reason to suppose that it intended to open the doors of its courts, as against the United States, to suits which could not there have been prosecuted against an individual or his property. The general language of every statute must be read in the light of the legislative intent, in so far as that is unmistakably expressed."

We find ourselves in full accord with the doctrine laid down in the above case. The conclusion we have reached on the question discussed is supported also by Galban Lobo & Co. v. United States, 285 Fed. 665. decided by Judge Augustus N. Hand in the Southern district of New York on June 26, 1922, and by Axtell v. United States, 286 Fed. 165, decided by Judge Garvin in the Eastern district of New York on September 20, 1922. The case of Middleton & Co. v. United States, 273 Fed. 199, decided by Judge Smith in the Eastern district of South Carolina, asserts a contrary doctrine. And so does the case of Smith v. United States, 287 Fed. ——, decided on August 4, 1922, in the Eastern district of Louisiana and not yet reported,[1] as well as that

[1] Pending on motion for new trial, in view of the decision of the Supreme Court of the United States in Blamberg Bros. v. United States, 43 Sup. Ct. 179, 67 L. Ed. ——.

of Alsberg v. United States, 285 Fed. 573, decided by Judge Mack in the Southern district of New York on September 15, 1922.

Inasmuch as in our opinion the court below was without jurisdiction to entertain the libel, the Isonomia not being found within the district, we find it unnecessary to consider whether the agreement upon which the libel is based was a wharfage agreement, and whether all the services rendered thereunder were wharfage services, or whether a lien for wharfage of a domestic vessel exists under the general maritime law, or under the Act of June 5, 1920.

Decree affirmed.