## THE ADVANCE.

## GENERAL SUGAR ESTATES, Inc., v. THE ADVANCE.

### No. 147.

District Court, E. D. Pennsylvania.

Feb. 19, 1942.

On Application for Rehearing June 11, 1942.

Conlen LaBrum & Beechwood, and James S. Benn, Jr., all of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., and J. Barton Rettew, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

GANEY, District Judge.

This matter arises in admiralty by reason of the fact that the Steamship "Advance" of Finnish Registry, which had been idle in the port of Philadelphia was on the 27th day of December, 1941, formally requisitioned by the United States Maritime Commission by virtue and in pursuance of the Act of Congress of June 6, 1941, 46 U.S.C.A. note preceding section 1101. Thereafter, on December 31, 1941, the libellant filed its libel in rem to recover for cargo damage and a writ of attachment issued. Accordingly, since the Advance had been idle in the port of Philadelphia for sometime before the Government requisitioned the title under the Act of June 6, 1941, which is later adverted to,

the libellant must have had opportunity to have asserted its lien claim during that interim. It did not do so but filed its libel after the Advance had been requisitioned. On January 13, 1942, the United States filed a motion to vacate the writ of attachment and dismiss the libel which is presently before the court for disposition.

�enumerate The rights of the libellant are to be determined here according to the provisions of the Act of June 6, 1941, by authority of which the vessel was requisitioned. This act provides a complete system for the requisition of vessels, the determination of just compensation and appropriate remedy for the payment of maritime liens. It provides for the determination of just compensation by the Maritime Commission and when so determined, for the payment of the amount into the Treasury of the United States. When the fund is deposited, it is available for the payment of any valid maritime or attachment lien claim against the vessel. The holder of this maritime lien or attachment lien is permitted to commence within six months after the deposit a suit in Admiralty according to the principles of libels in rem against the fund in the United States District Court in whose territorial jurisdiction the vessel was lying at the time of the requisition. The rights of the party are to be heard and determined according to the principles of law and the rules of procedure obtaining in like matters between private parties. The process issued by the Court thereunder is served by service of the libel and the writ on the United States Attorney and by mailing by registered mail copies of the libel and writ to the United States Maritime Commission and the Attorney General. Due notice otherwise is to be given as the Court may direct. The Act provides the comprehensive plan for the requisitioning of vessels under foreign flag as well as securing compensation to all parties, including those who had existing lien rights against the vessel at the time of the requisition. The rights of the libellant in this case are therefore fully protected. He is required to follow the procedure provided by the Act by filing a libel against the compensation fund deposited with the Treasury within the six months' period. If such action be brought and his rights to the maritime lien established and the amount thereof, payment of the final decree entered in the proceedings will be made out of the moneys so deposited.

To hold that there is a right to maintain a libel against vessels acquired by the United States, and that such vessels are subject to attachment under the process of the Court, would seriously interfere with the use and operation of these requisitioned vessels in the important services to which they have been assigned, and which we feel was not within the contemplation of Congress.

The Supreme Court in United States Shipping Board Emergency Fleet Corporation v. Rosenberg Bros. & Co., 276 U.S. 202, 48 S.Ct. 256, 72 L.Ed. 531, and Johnson v. United States Shipping Board, etc., Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, required the holders of maritime liens against the vessel to pursue the remedy which the Act provides and required the application of this exclusive theory.

In conformity herewith the libel against the Steamship "Advance" is dismissed and the attachment therein is hereby quashed.

### On Application for Rehearing.

This matter comes before the Court pursuant to an application for a rehearing.

▅ The petition for the rehearing and the argument thereon concern themselves with the amendment of the Order of this Court entered as of February 19, 1942, vacating an attachment and dismissing a libel against the Steamship "Advance" and in lieu thereof "that the motion to dismiss the libel be denied and that all proceedings in the case be stayed with leave, however, to the libellant at any time within six months after the deposit with the Treasurer of the United States of compensation for the steamship 'Advance', to amend said libel and proceed with the prosecution of the suit in accordance with the requirements of the Act of June 6, 1941, with regard to suits against such fund, with the same force and effect and in the same manner as if this suit were originally commenced against the said fund." In other words, the libellant asks that the decree vacating the attachment be not altered, since the "Advance" is now at sea, but that the libel be not dismissed but held in statu quo until a fund is deposited with the Treasury of the United States by way of just compensation for the taking of the vessel in order that the libellant might proceed against said fund. This retention of jurisdiction of the libel, counsel for the libellant contends should be done in the exercise of the broad equitable powers in-

herent in the Admiralty Courts. In substantiation of this contention, he cites The Pietro Campanella, D.C., 41 F.Supp. 656, and W. H. Stott & Co. v. A/S D/S Vesterhavet, D.C., 40 F.Supp. 637. With these rulings I am in agreement and were like factual elements to exist here I should grant libellant's prayer. However, in both of these cases, examination will disclose that the lien attached before the Government took over the vessels, which is an entirely different factual situation than that existing in the instant case, for here, while the cause of action arose previous to the Government taking, the attachment was not made until the vessel was the property of the United States.

Counsel for the libellant has also pressed upon the Court the case of The Kaiser Wilhelm II, 3 Cir., 246 F. 786, L.R.A. 1918C, 795, as an example of where a Court of Admiralty exercises its broad equitable powers and as an instance where the jurisdiction of a libel was retained for later disposition. However, again in this instance, the vessel was libeled while the property of a German company and it was only after the vessel had been libeled that the Government took the same over, and accordingly, since the Court had discretion to take jurisdiction here and did take it, I am in agreement with the Court's ruling that it was proper to retain jurisdiction of the libel for later disposition. Counsel has not cited, nor has diligence disclosed any authority which holds that the Court has any authority to retain jurisdiction of a libel which was filed against a vessel that was the property of the United States.

I feel that the Court never had jurisdiction here which it could retain by reason of the Suits in Admiralty Act of March 9, 1920, 46 U.S.C.A. § 741 whereof is as follows:

"Section 741. Exemption of United States vessels and cargoes from arrest or seizure. No vessel owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock or in the possession of the United States or of such corporation or operated by or for the United States or such corporation, and no cargo owned or possessed by the United States or by such corporation, shall, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions: Provided, That this chapter shall not apply to the Panama Railroad Company. (Mar. 9, 1920, c. 95, § 1, 41 Stat. 525.)"

While counsel for the libellant contends that this statute is inapplicable because most of the cases arising thereunder are where the cause of action against the vessel arose while owned by the United States, I am of the opinion that the Act should be construed strictly, as was held by the Court in The Isonomia, 2 Cir., 285 F. 516, 520, wherein the Court said:

"In interpreting the act [this chapter], permitting as it does a suit to be brought against the United States, we must follow the rule of strict construction. This follows from the fact that the United States cannot be sued without their consent, and, if Congress in certain cases gives its consent, the courts are confined to the letter of the statute which expresses such consent. Schillinger v. United States, 155 U. S. 163, 166, 15 S.Ct. 85, 39 L.Ed. 108. And all the provisions of such a statute are jurisdictional. As the liability and the remedy are created by the statute, the limitations of the remedy are regarded as limitations of the right. The Harrisburg, 119 U.S. [199], 214, 7 S.Ct. 140, 30 L.Ed. 358."

In construing this section of the Act, I therefore feel that it makes no difference when the cause of action arose on which the libel is grounded, but that what the Congress intended to prevent, was the interference with Government owned vessels by the filing of libels, and to substitute therefor actions in personam.

Accordingly, it is held that since the vessel was libeled as a Government owned vessel, this Court has no jurisdiction to retain the libel, and accordingly it must be dismissed.