**UNITED STATES v. KNAUTH et al.**
**THE ARAUCA.**
No. 13061.

United States Court of Appeals
Fifth Circuit.

July 21, 1950.

Herbert S. Phillips, Acting U. S. Atty., Tampa, Fla., J. Frank Staley, Dept. of Justice, Washington, D. C., for appellant.

Cody Fowler, Miami, Fla., Arnold W. Knauth, New York City, for appellees.

Before HOLMES, WALLER, and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a final decree in admiralty holding that appellees have a maritime and attachment lien entitling them to recover from and against the fund deposited with the Treasurer of the United States on account of just compensation for the vessel Arauca the sum of $37,500 as proctors' fees for services performed on behalf of the said Arauca. The uncontroverted facts which give rise to the present controversy are these:

During the period beginning May 4, 1940 and ending July 10, 1941 seven libels *in personam* on behalf of various cargo owners and underwriters were filed in the Miami Division of the Southern District of Florida against the Hamburg American Line, a German corporation, with prayers for writs of foreign attachment against its freighter Arauca. The vessel, then within the jurisdiction of the District Court, was attached under foreign attachment writs and was taken into custody by the marshal. Appellees were retained by the Hamburg American Line as its proctors for the defense of those claims which were incident to the operation of vessels belonging to the Line other than The Arauca. Appellees duly appeared for the Hamburg American Line in each of said causes, and various proceedings were had up to and including October 8, 1941. It was for the legal services which appellees rendered in these cases and for the results attributable to their efforts that the District Court allowed the fees against which the Government is here appealing.

By authority of the Act of June 6, 1941, 55 Stat. 242, as amended, 50 U.S.C.A.Appendix, § 1271 the President acting through the United States Maritime Commission duly requisitioned title to and possession of The Arauca on July 28, 1941 and appropriate orders were entered in each of the cases recognizing such requisition and affirming the action of the marshal in surrendering custody of The Arauca to the Maritime Commission. On December 11, 1941, the United States declared a state of war against the German Reich and the Hamburg American Line then became an enemy alien.

On August 28, 1942 the Alien Property Custodian acting pursuant to the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., First War Powers Act of Dec. 18, 1941, 55 Stat. 839, 50 U.S.C.A.Appendix, § 616, issued Vesting Order No. 126,[1] covering all property owned by or owing to the Hamburg American Line including The Arauca, her engines, apparel, equipment, appurtenances and freight, and any claims arising out of the vessel's requisition. This order unconditionally and without redress or right of compensation except as might be provided otherwise by future legislation divested Hamburg American Line of all right, title and interest in such property including The Arauca, without impairing any requisition rights the United States had exercised.

The Act of June 6, 1941, as amended, pursuant to which The Arauca was requisitioned by the United States, provides in effect that just compensation shall be paid by the United States to the owner of any

---

1. See 7 F.R. 7061.

vessel so requisitioned and that said just compensation shall be available for the payment of any mortgage, maritime lien, or attachment lien on the said vessel at the time of requisition, and that proceedings to enforce said liens may be brought by the holders thereof against the fund of just compensation in the district from which the vessel was requisitioned, and that said proceedings shall be conducted according to the principles of libels *in rem.*

In conformity with the provisions of the Act of June 6, 1941, as amended, the Maritime Commission on or about May 5, 1943, deposited with the Treasurer of the United States the sum of $10,000 on account of just compensation for the requisition of and taking of title to The Arauca and thereafter all of the seven above libelants, save one whose claim had been compromised and satisfied, refiled libels against the fund of just compensation based upon their original causes of action and upon their alleged attachment liens existing against the vessel at the time of requisition. On November 5, 1943, appellees filed their libel or petition alleging that they had an attorney's lien upon The Arauca and that "said attorney's lien was and is an admiralty lien" and praying for an allowance of fees from the fund deposited as just compensation for The Arauca for their services in connection with the defense and conduct of the several litigations above described.

On December 10, 1943, the United States of America filed its claim to the said fund as the depository and lawful bailee for whomever lawfully may be determined to be the owner or owners of The Arauca and for whomever lawfully may be determined to be the holder of valid claims by way of mortgage or maritime lien or attachment lien upon such vessel subsisting at the time of the requisition or taking of title to or possession thereof. On December 27, 1943, the Alien Property Custodian likewise made claim to the Fund alleging that at the time of the filing of the libel herein all rights, title and interest in and to the fund was vested in himself by virtue of Vesting Order No. 126. Concurrently with the filing of the claim first mentioned the United States of America and the Alien Property Custodian filed joint and several answers to the libel and complaint of appellees, denying that they had any lien rights against the fund within the terms of the Act of June 6, 1941, entitling them to the relief asked. On April 14, 1947, the Attorney General of the United States, as successor to the Alien Property Custodian, was substituted in all respects as a party in place and stead of the Alien Property Custodian.

The Court below made findings of fact and in its conclusions of law stated that appellees had a lien to secure payment of their fees; that the lien having been created in maritime litigation, had enough maritime features to be held to be, for all intents and purposes, a maritime lien; and that it could well have been but for the war, that had The Arauca sought to depart from the United States, without payment of fees, proctors could have libeled the ship for their services and thus secured what amounts to an attachment lien. The Court further concluded that proctors' fees for services performed on behalf of The Arauca should be awarded in the amount of $37,500, subject however to a credit of $10,000 heretofore paid as advance payments towards fees, and a decree was entered reciting that appellees do have and recover by way of a maritime or attachment lien from and against the fund deposited the sum of $27,500, the balance due and payable as reasonable proctors' fees.

Confining our present discussion to the Court's conclusion in respect to the attachment lien we think it clear that the Court below erred in holding that under the contingencies expressed appellees could have libeled the ship for their services and thus secured what amounts to an attachment lien. Admiralty attachments are never *in rem.*[2] What the Court doubtless meant, but did not say, was that appellees as creditors of their client could under normal conditions sue their client *in personam* with seizure of The Arauca under a foreign attachment writ and thus secure what

---

2. **Supreme Court Admiralty Rules 2, 5, 28 U.S.C.A.**

amounts to an attachment lien. Now it will be remembered that appellees filed their petition under assumed authority of the Act of June 6, 1941, as amended, more than 27 months after the Government had requisitioned title to The Arauca, and that they bottomed their claim upon an attorney's lien which they alleged was and is an Admiralty lien. At no time have appellees instituted any proceedings against the Hamburg American Line to recover their fees asserting foreign attachment rights which could be the only procedural method for securing an attachment lien. Nevertheless the Court below gave appellees two strings to the bow and decreed that proctors had and were entitled to recover their fees from the fund by way of a maritime or attachment lien. Appellant contends that the decree was wrong and may not stand. We agree.

■ The language of the second proviso of the Act of June 6, 1941, as amended, should allay any doubt in respect to the right of appellees to assert an attachment lien claim against the fund. That proviso reads: "That such compensation hereunder, or advances on account thereof, shall be deposited with the Treasurer of the United States, and the fund so deposited shall be available for the payment of such compensation, and shall be subject to be applied to the payment of the amount of any valid claim by way of mortgage or maritime lien or attachment lien upon such vessel, or of any stipulation therefor in a court of the United States, or of any State, *subsisting at the time of such requisition or taking of title* or possession; the holder of any such claim may commence * * * within six months after * * * deposit with the Treasurer * * * and maintain in the United States district court from whose custody such vessel has been or may be taken or in whose territorial jurisdiction the vessel was lying at the time of requisition or taking of title or possession, a suit in admiralty according to the principles of libels *in rem* against the fund, which shall proceed and be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties, * * *." (Emphasis added.)

Appellees contend that the right to make a claim against the fund is dependent only on the condition that their legal services were subsisting at the time of requisition. We think otherwise. The language of the statute is, "any valid claim by way of * * * attachment lien upon such vessel * * * subsisting at the time of such requisition." This language clearly contemplates a situation in which the claimant, prior to the time of requisition by the Government, has filed a libel *in personam* with prayer for writ of foreign attachment and upon respondent being not found in the District the marshal has proceeded to attach respondent's goods for the purpose of obtaining jurisdiction over the respondent and security up to the value of the property attached. This view is not only compelled by the statutory language itself but is also demanded by the only expression of intent provided by Congress. The legislative history of the provision under consideration shows that it was inserted in the Act of June 6, 1941 by way of amendment on the floor of the Senate [3] and was subsequently accepted by the conferees and by the House without comment.[4] Senator George, who introduced the amendment, which was unanimously adopted by the Senate without debate, said in explanation thereof:

"* * * the whole purpose of the amendment which I suggested was that *in the case of the arrest of a ship under proceedings in admiralty, and therefore already in the hands of the courts at the time of the requisitioning* or the taking over under this act, the purchase price should be paid into the registry of the court so that the claimant might proceed against the fund as if the ship had not been disposed of or taken over by the Government. * * * This particular form of amendment * *

---

3. Vol. 87, Cong.Record, p. 4033, 77th Cong. 1st Sess.

4. U.S.Code Congressional Service, 77th Cong. 1st Sess., 1941. For statement of managers of bill on part of House see Cong.Record, supra, p. 4450.

would seem to accomplish the same purpose. * * *"

"My amendment simply proposed that if the vessel *had been seized* and was in the course of administration, the compensation paid should be paid *into the registry of the courts* * * * so as to protect lien holders for any claims they might have on the property." (Emphasis supplied.)

Since nothing even suggestive of an attachment lien could possibly arise until the vessel had been attached, it must be assumed as is indicated from the legislative history of the section that Congress intended that the attachment lien provision would cover a situation where the vessel had been seized under writ of foreign attachment instituted by the claimant and was as a result of such attachment in the hands of the Court at the time of requisition. Counsel has not cited nor has diligent research disclosed a single instance in which a claimant was permitted to come within the attachment lien provision who had not secured attachment of the vessel prior to the date of requisition. The Advance, D.C., 45 F.Supp. 547, upon which appellees rely is not apposite. That case simply held that a libelant having a lien against *The Advance* for cargo damages sustained prior to the date on which the vessel was requisitioned must file its libel against the compensation fund in accordance with the provisions of the Act of June 6, 1941, as amended, and cannot maintain a libel against the vessel itself in view of the provisions of the Suits in Admiralty Act [5] which exempts Government owned vessels from arrest or seizure.

■■ This brings us to the question as to whether or not a proctor in admiralty obtains a maritime lien on a vessel for professional services rendered in defending the vessel's owner. There is no statutory definition of maritime jurisdiction, its scope being fixed by the brief words of the Constitution extending the judicial power "to all Cases of admiralty and maritime Juris-

diction." U.S.Const. Art. III, § 2. "The jurisdiction embraces all maritime contracts, torts, injuries, or offenses; and it depends, in cases of contract, upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching right and duties appertaining to commerce and navigation." The Eclipse, 135 U.S. 599, 608, 10 S.Ct. 873, 876, 34 L.Ed. 269. Looking therefore to traditional admiralty jurisdiction for guidance we experience no difficulty in reaching the conclusion that appellees do not have a maritime lien on The Arauca for the legal services rendered to Hamburg American Line in respect to the several litigations described. The services performed by appellees were rendered not to The Arauca but as proctors for its owner in defense of libels *in personam*. Proctors acquired no lien rights against the requisition fund. U. S. v. Pietro Campanella, D.C., 81 F.Supp. 475. However they do have an appropriate remedy under the Trading With the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 34, and this record shows that they have already filed their suit against the Custodian in the District of Columbia. But we need not labor the point since it is settled in this Circuit that a proctor in admiralty does not obtain a maritime lien on property involved in litigation in which he acts for the owner.[6]

Nor is this a case where a lawyer's work has created a fund in the control of the courts. Services rendered by appellees have not created any funds. On the contrary, they were of a defensive character throughout and no such lien could arise.[7]

Having concluded that appellees did not acquire a maritime or attachment lien which could be asserted against the fund we do not reach the question as to the reasonableness of the fees allowed by the Court below. The further contentions on behalf of appellees have been considered but do not merit discussion.

5. 46 U.S.C.A. § 741 et seq.

6. Gray v. Hopkins-Carter Hardware, 5 Cir., 32 F.2d 876; see also The Jeanette, D.C., 9 F.2d 408; Johnson Lighterage Co. No. 15, 3 Cir., 248 F. 74.

7. Chancey v. Bauer, 5 Cir., 97 F.2d 293, 294.

For the reasons above stated, the decree of the Court below is reversed.

WALLER, Circuit Judge, participated in the hearing and decision of this cause, but died before the opinion was filed.